# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WOODMORE, | 1:08-cv-01790-AWI-DLB HC |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | [Doc. 1] |
| JAMES D. HARTLEY, Warden | |
|     Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR), following his conviction for second degree murder. Petitioner is serving a sentence of fifteen years to life, plus a one-year firearm enhancement.

In the instant petition for writ of habeas corpus Petitioner does not challenge the constitutional validity of the judgment; rather, he challenges the Board of Parole Hearings' (Board) March 6, 2007 decision finding him unsuitable for release on parole.

On August 22, 2007, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court claiming that the Board's 2007 decision denying him parole violated his constitutional rights. (Exhibit 1, to Answer.)

On November 8, 2007, the superior court denied the petition in a reasoned decision. (Exhibit 2, to Answer.)

On February 4, 2008, Petitioner filed a petition in the California Court of Appeal, Second Appellate District. (Exhibit 3, to Answer.) On February 21, 2008, the appellate court denied the petition in reasoned decision citing <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1070-1071 (2005) and <u>In re Rosenkrantz</u>, 29 Cal.4th 616 (2002). (Exhibit 4, to Answer.)

On April 10, 2008, Petitioner filed a petition in the California Supreme Court. (Exhibit 5, to Answer.) The petition was summarily denied on October 1, 2008. (Exhibit 6, to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on November 21, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on February 19, 2009, and Petitioner filed a traverse on March 24, 2009. (Court Docs. 13, 16.)

## STATEMENT OF FACTS

On July 10, 1992, Petitioner was involved in a gang-related retaliation murder of Robert Reed. Petitioner and his crime partner, Leonicio Meraz, were retaliating for the murder of fellow gang member Jose Aguirre. At the time of the murder, Petitioner was a member of the Eighty Fourth Street Swan Gang. After Aquirre's murder there were rumors that the person responsible was a member of the rival gang Main Street Crips or East Coast Crips. At the scene of Aquirre's murder, police observed Meraz to be very upset and hostile over the murder, and made statements that he knew who did it and he would take care of it. Police observed Meraz leave with Petitioner and Mr. Pardo.

The next morning at approximately 12:50 a.m., officers heard four to five gunshots and observed Meraz running southbound with a gun in his hand. Officers ordered Meraz to stop but he did not comply. The officers observed Meraz throw a gun into a waiting car and hang onto the window as it drove off. It was later determined that Petitioner and Pardo were in the car. The officers went to the Daniel Freeman Hospital where Aquirre had been taken earlier in an attempt to locate Petitioner and his crime partners. At approximately 3:00 a.m., Petitioner, Meraz, and Pedro were found hiding in the bushes at the hospital and were detained by officers.

The investigation revealed that Meraz lured Robert Reed to his vehicle claiming he would

sell him a dime bag of Cocaine. As Reed was approaching Meraz, he pulled out a gun and fired several shots striking him in several different places. It was found that Petitioner was armed during this incident and was the driver of the vehicle.

(Exhibit 1, to Answer, Transcript, at 15-17, 49-50.)

## DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

4

Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this instance, the last reasoned state court decision of the California Court of Appeal cited to In re Dannenberg, 34 Cal.4th 1061, 1070-1071 (2005) and In re Rosenkrantz, 29 Cal.4th 616 (2002), and found some-evidence supported the Board's decision finding Petitioner unsuitable for release on parole. Ylst v. Nunnemaker, 501 U.S. 797, 804-805 (1991); see also Exhibit 4, to Answer.)

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454

(1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Exhibit 1, to Answer.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable

standard "is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[1]

At the 2007 hearing, the Board found Petitioner unsuitable for release due to (1) the circumstances of the commitment offense and trivial motive; (2) prior criminal history; (3) inconclusive psychological report; (4) unstable social history; (5) failure to upgrade educationally; and (6) opposition by the District Attorney's office.

With regard to the commitment offense, the Board found that it was carried out in a dispassionate and calculated manner. 15 Cal. Code Regs. § 2402(c)(1)(B).[2] In this instance, the murder was obviously calculated and premeditated. Meraz was heard stating that he knew who

---

[1] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

[2] Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

shot Aquirre-a fellow gang member-and he would take care of it. He lured Mr. Reed into believing that he would sell him drugs and then fired several shots at him in close range. The fact that Petitioner did not actually fire the shotgun that killed Reed, is irrelevant. Meraz's actions are imputed to Petitioner, as he was present and participated in the murder by waiting in the car and driving off with Meraz after the shooting. In light of these circumstances, there is some evidence to support the Board's finding that the murder was planned and deliberated and carried out in a dispassionate and calculated manner.[3] The Board also found that the motive was very trivial in relation to the offense. The fact that Petitioner and his crime partners sought street revenge in retaliation for a previous shooting of a fellow gang member, is very trivial considering the victim was not a present threat and did not provoke them personally. Under these circumstances, committing a murder against a random rival gang member in retaliation is a very trivial motive.

      The Board also found that previous criminal history was indicative of his unsuitability. Petitioner had sustained several juvenile convictions. His first offense occurred in 1983 for robbery with a firearm, and he served time in the California Youth Authority (CYA). He later violated parole and was returned to the CYA. (Exhibit 1, to Answer, Transcript at 61.) In 1989, as an adult, he was convicted of carrying a loaded firearm in public-a misdemeanor, and he served ninety days in jail and was placed on three years probation. (Id. at 62.) In 1990, he was convicted of receiving stolen property and received three days in jail and probation. In 1991, he was convicted of sale and transportation of a controlled substance and received 300 days in jail and three years probation. In 1992, he was convicted of driving without a license and sentenced to two years probation. Later, in 1992, he was convicted of possession of cocaine and prior to sentencing committed the instant offense. (Id. at 62.) At the 2007 hearing, Petitioner acknowledged that his 1989 conviction for carrying a loaded firearm in public was for his protection from a previous incident involving rival gang members. (Id. at 47-48.) In addition, he acknowledged that he was selling cocaine for the benefit of his gang. (Id. at 48.) Thus, as stated

---

[3] The Court does not find some evidence to support the Board's finding that the commitment offense demonstrated an exceptionally callous disregard for human suffering. There is no evidence in the record to suggest that the victim endured prolonged violence or abuse or that it was more violent than any other shooting.

8

by the Board, he was continually arrested for one type of crime or another until 1992-the date of the commitment offense. (Id. at 63.)

The Board also considered Petitioner's unstable history including involvement in gang-related activities and he has failed to upgrade educationally. Petitioner admitted that he joined the gang life when he was in the seventh or eighth grade. In addition, he only has a ninth grade education and he has failed to upgrade educationally during his entire incarceration. He also began using marijuana at the age of 14. Although these factors, alone, do not demonstrate unsuitability, they may properly be considered by the Board in rendering its determination of suitability. 15 Cal. Code Regs. § 2402(b).

The Board also pointed out that the psychological report was inconclusive because the doctor was unable to assess what Petitioner's level of risk would be in the free community due to his continued assertion that he is innocent. (Exhibit 1, to Answer, Transcript at 63.) The Board requested that a new evaluation be conducted before the next hearing to address this issue. (Id. at 64.)

While not a statutory basis to deny parole, the Board is required to consider statements submitted by such officials. See Cal. Penal Code § 3046(c) (the Board is required to consider statements and recommendations by the judge, district attorney, and sheriff); In re Dannenberg, 34 Cal.4th 1061, 1084 (2005). A representative from the District Attorney's Office was present at the hearing and opposed Petitioner's release. (Exhibit 1, to Answer, Transcript at 49-51.) This factor was properly considered, among others, in determining whether Petitioner was suitable for release.

The Board also considered the positive factors in support of suitability pursuant to § 2402(d). The Board acknowledged that Petitioner had not received a single rules violation report during his entire incarceration, he had solid parole plans, including a job offer and residency, completion of vocational training in auto body and participation in welding, consistent participation in Alcoholics Anonymous and Narcotics Anonymous, and participation in self-help programming, including Alternatives to Violence, Self-Confrontation, Learning to Deal with Anger, charitable work, and Bible Studies. (Id. at 63-68.) However, on balance, these positive

factors did not outweigh the factors in support of unsuitability.

Petitioner contends the Board has relied solely on the immutable circumstances of the underlying offense and his criminal history prior to incarceration. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense because, as in this case, the petitioners had not yet served the minimum term. At the time of the 2007 hearing, Petitioner had served just over 13 years on a 16 years-to-life sentence. Accordingly, the due process concerns expressed in Biggs and Irons are not yet implicated, and Petitioner's claim to the contrary should be rejected. In addition, Petitioner has not been denied parole forever; rather, the Board stated that he would be considered again in one year.

In sum, this Court cannot conclude that the Board's denial of parole has resulted in a due process violation when considering, in combination, the circumstances of the commitment offense, prior criminal history, inconclusive psychological report, unstable social history, failure to upgrade educationally, and opposition by the District Attorney's office. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District

1 | Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the
2 | Local Rules of Practice for the United States District Court, Eastern District of California. Within
3 | thirty (30) days after being served with a copy, any party may file written objections with the
4 | court and serve a copy on all parties. Such a document should be captioned "Objections to
5 | Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and
6 | filed within fourteen (14) days after service of the objections. The Court will then review the
7 | Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that
8 | failure to file objections within the specified time may waive the right to appeal the District
9 | Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    **Dated:   February 11, 2010**        **/s/ Dennis L. Beck**
    UNITED STATES MAGISTRATE JUDGE